## FRENCH SILVER DRAGÉE CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. June 14, 1910.)

No. 307.

FOOD (§ 5*)—PURE FOOD ACT—CONSTRUCTION—SILVER COATING ON CANDY—"OTHER MINERAL SUBSTANCES."

Pure Food and Drug Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), is entitled "An act for preventing the manufacture, sale or transportation of adulterated or misbranded or poisonous or deleterious foods, drugs, medicines and liquors," and section 7 provides that an article shall be deemed adulterated, in the case of confectionery, if it contains terra alba, barytes, talc, chrome yellow, or other mineral substances or poisonous color or flavor, or other ingredient deleterious or detrimental to health. *Held* that, since the purpose of the act was to protect the purchaser of food products from having inferior and different articles passed off on him in place of those he desired, and to protect him from injury by prohibiting the addition to foods of substances poisonous or deleterious to health, the words "other mineral substances," under the doctrine of *ejusdem generis*, included other mineral substances which are deleterious or detrimental to health of the same nature as those specifically described preceding such words, and hence did not include a thin coating of pure silver covering candy, used principally by confectioners for decorative purposes, and not deleterious or detrimental to health.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 5.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

The French Silver Dragée Company was convicted of violating the pure food act, and it brings error. Reversed.

Writ of error to review a judgment convicting the plaintiff in error (hereinafter called the defendant) of a violation of Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), known as the "Pure Food Act." The indictment alleged the interstate shipment of a quantity of confectionery claimed to be adulterated, in that it contained "a certain mineral substance, to wit, metallic silver."

The confectionery in question is sold under the name of "Silver Dragée," and is a small article made of sugar and thinly coated with pure silver. It it used principally by confectioners for decorating boxes of candy. The object of the silver coating is to be conspicuous, and the silver is not employed for any purpose of deception. So, for the purposes of this case, the silver coating must be considered as being in no way deleterious or detrimental to health.

The trial judge ruled as follows: "I assume that it has no effect on the result of this case if it were overwhelmingly proved that the administration of pure silver into the human system in quantities such as are attached to these dragées was perfectly inoperative, and to that statement of what I conceive to be the effect of its action you can take an exception."

Section 7 of the act under which the indictment was framed—the section here in question—is printed in full in the margin† and the especially relevant

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Sec. 7. That for the purposes of this act an article shall be deemed to be adulterated:
In case of drugs:
First. If, when a drug is sold under or by a name recognized in the United States Pharmacopoeia or National Formulary, it differs from the standard of strength, quality, or purity, as determined by the test laid down in the United States Pharmacopoeia or National Formulary official at the time of investigation: Provided, That no drug defined in the United States Pharmacopoeia or National Formulary shall be deemed to be adulterated under this provision if the standard of strength, quality, or purity be plainly

portions thereof follow: "That for the purposes of this act an article shall be deemed to be adulterated: * * * In the case of confectionery: If it contain terra alba, barytes, talc, chrome yellow, or other mineral substances or poisonous color or flavor, or other ingredient deleterious or detrimental to health, or any vinous, malt or spirituous liquor or compound or narcotic drug. * * * "

The rulings of the trial court were based upon the interpretation of the statute that all it was necessary for the government to establish—interstate traffic being admitted—was that the confectionery in question contained silver; it being a mineral substance.

L. T. Fetzer (William M. Seufert, of counsel), for plaintiff in error.

Henry A. Wise, U. S. Atty. (Robert Stephenson, Asst. U. S. Atty., of counsel), for the United States.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). In interpreting the provisions of the act now in question—the pure food act—it is of importance to ascertain at the outset the objects which Congress sought to accomplish by its enactment and the evils intended to be remedied by it. If we go outside the act itself, and consider the circumstances surrounding its adoption, we find a congressional committee report urging that the objects of the bill were:

(1) To protect the purchaser of food products from being deceived and cheated by having inferior and different articles passed off upon him in place of those which he desired to obtain.

(2) To protect such purchaser from injury by prohibiting the addition to foods of foreign substances poisonous or deleterious to health.

Or, briefly stated:

"That which is forbidden is the sale of goods under false pretenses, or the sale of poisonous articles for food."

Turning now to the act itself: An examination of the title indicates its purposes. It is entitled:

"An act for preventing the manufacture, sale or transportation of adulterated or misbranded or poisonous or deleterious foods, drugs, medicines and liquors."

---

stated upon the bottle, box, or other container thereof although the standard may differ from that determined by the test laid down in the United States Pharmacopœia or National Formulary.

Second. If its strength or purity fall below the professed standard or quality under which it is sold.

In the case of confectionery:

If it contain terra alba, barytes, talc, chrome yellow, or other mineral substance or poisonous color or flavor, or other ingredient deleterius or detrimental to health, or any vinous, malt or spirituous liquor or compound or narcotic drug.

In the case of food:

First. If any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength.

Second. If any substance has been substituted wholly or in part for the article.

Third. If any valuable constitutent of the article has been wholly or in part abstracted.

Fourth. If it be mixed, colored, powdered, coated, or stained in a manner whereby damage or inferiority is concealed.

Fifth. If it contain any added poisonous or other added deleterious ingredient which may render such article injurious to health: Provided, that when in the preparation of food products for shipment they are preserved by any external application applied in such manner that the preservative is necessarily removed mechanically, or by maceration in water, or otherwise, and directions for the removal of said preservative shall be printed on the covering or the package, the provisions of this act shall be construed as applying only when said products are ready for consumption.

Sixth. If it consists in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a deceased animal, or one that has died otherwise than by slaughter.

And, examining the particular section now in question, we find the purpose all through it to protect the public from deceit and injury. Drugs are declared to be adulterated if their strength or purity fall below certain standards. The intent to prevent both deceit and injury are here apparent. So food is deemed to be adulterated:

(1) If its quality or strength is reduced by the mixture of other substances;

(2) If one substance has been substituted for another;

(3) If a valuable ingredient has been abstracted;

(4) If it is mixed or colored so that damage or inferiority is concealed;

(5) If poisonous ingredients or ingredients making the article injurious to health are added;

(6) If the article consists of decomposed or putrid animal or vegetable substances.

The obvious purpose of provisions (1), (2), (3), and (4) is to protect the public from deceit and false pretenses; of provisions (5) and (6), from injury to health.

Other sections of the act also indicate the same objects. The terms "false," "misleading," "deceive," "poisonous," "deleterious," appear in many places. Indeed, a careful examination of the whole act clearly shows that its object is, as already indicated:

(1) To prevent deceit and false pretenses in the sale of food and drugs;

(2) To safeguard the public health.

Bearing these objects in mind, we must now examine the subsection of the act especially relating to confectionery. If we find upon such examination a possible construction of the provision which would not afford protection to the public from deceit or injury, and woud merely stop traffic in an article neither injurious nor capable of deceiving, we should seek to avoid it. General language should not be so construed as to ruin a legitimate business, and yet remedy none of the evils the statute was designed to remove. In the language of the Supreme Court of the United States in Holy Trinity Church v. United States, 143 U. S. 457, 459, 12 Sup. Ct. 511, 512, 36 L. Ed. 226:

"It is a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the Reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act."

The interpretation given to the statute by the trial court was that the words "or other mineral substance," following the phrase "in the case of confectionery: If it contain terra alba, barytes, talc, chrome yellow"—broadly included every mineral substance, including silver.

The defendant, on the other hand, contends that the different clauses of the subsection in question should be construed together and that, so construed, they embrace only those substances which are deceptive or are detrimental to health.

Interpreting the provision as embracing in the phrase "or other mineral substances" all mineral substances whatsoever, it is apparent that the use of the mineral substances, salt, sulphur, and baking soda, in the manufacture of confectionery—and it appears that they are so used—would render the product adulterated within the meaning of the statute and its sale unlawful. Similarly, the use of silver to coat these dragées would violate the act. But the product in which the salt, sulphur, baking soda, or silver was used would not be unhealthful, nor would there be any element of deceit present. The provision so construed would arbitrarily prohibit the use of all mineral substances in confectionery, would accomplish thereby none of the purposes of the act, and would apply a different standard in the case of confectionery than in the case of food or drugs. Unless the language of the statute imperatively requires such construction, it should not be adopted by the courts.

The construction of the provision contended for by the defendant is in accordance with the ejusdem generis doctrine. The rule that, when general words follow the enumeration of particular things, such words will be held to include only such things as are of the same kind as those specifically enumerated, is, of course, well settled. It is unnecessary to refer to more than one case to illustrate its application. Thus in Gundling v. City of Chicago, 176 Ill. 340, 52 N. E. 44, 48 L. R. A. 230, the court said:

"The articles, meats, poultry, fish, butter, and lard, which are expressly enumerated in the above paragraph, and the power expressly given therein to regulate the sale thereof, are articles of food for man, and include by the express enumeration of articles only provisions to be used by man. The term 'other provisions,' by a familiar canon of construction, can extend only to articles of the same character as those especially enumerated. When general words follow an enumeration of particular things, such words must be held to include only 'such things or subjects as are of the same kind as those specially enumerated.'"

We think the ejusdem generis rule especially applicable in this case for the reason—as already pointed out—that any broad construction would arbitrarily interfere with legitimate business and in no way promote the accomplishment of the objects of the statute. Indeed, the government in its brief in this court seems not to controvert seriously the proposition that the ejusdem generis rule should be applied. It states at the outset:

"The only question is whether metallic silver is included in the class 'other mineral substances.' Is metallic silver ejusdem generis with the mineral substances which precede it?"

Now, it appears that terra alba, barytes, and talc are used to mix with confectionery and cheapen it. There is nothing in the record to show that they are injurious to health. They are well-known adulterants—using that term in its ordinary sense. They increase bulk and weight at the expense of quality. Confectionery containing them is

really sold under false pretenses. Chrome yellow is a cheap coloring matter, and is poisonous. Silver, as used in these dragées, and as considered in connection with this statute, is not the same kind of mineral substance as terra alba, barytes, or talc. It is used to attract attention, not to deceive. Of course, like those minerals, it may be insoluble and inert; but the comparisons to be made must have in view the objects of the statute. Thus similarity within the rule would not be established by showing that the substances were all of the same color. So the silver upon these dragées has no similarity to chrome yellow. Unlike that mineral substance it is not poisonous.

In our opinion the clauses "or other mineral substance or poisonous color or flavor, or other ingredient deleterious or detrimental to health," following the enumerated substances, should be taken and interpreted together and mean:

(1) That the use in confectionery of terra alba, barytes, talc, or any other mineral substance, whether injurious to health or not, for purposes of deception, makes it unlawfully adulterated;

(2) That the use in confectionery of chrome yellow or other poisonous mineral substance or poisonous color or flavor makes it unlawfully adulterated;

(3) That the use in confectionery of any ingredient whatsoever which is deleterious or detrimental to health makes it unlawfully adulterated.

It is true that under this construction the third class of cases would include the second. "Any ingredient detrimental to health" undoubtedly includes all poisonous substances. But the clauses do not conflict, and redundancy is not unusual in statutory provisions.

Stated in another way, we think that the history of the act, the objects to be accomplished by it, and the language of all its provisions require that it should be so interpreted that in the case of confectionery, as in the cases of food and drugs, the government should establish, with respect to products not specifically named, that they either deceive, or are calculated to deceive, the public or are detrimental to health; and, as no proof was offered in this case tending to show that the confectionery in question was either deceptive or injurious, the defendant was improperly convicted.

The judgment of the Circuit Court is reversed.