UNITED STATES v. R. C. BOECKEL & CO. et al.

(Circuit Court of Appeals, First Circuit. April 6, 1915.)

No. 1086.

1. WORDS AND PHRASES—"TALC."

"Talc" is a mineral compound, not an article of food, and is known as hydrated silicate of magnesia.

2. FOOD ⬉⬊5 – TRANSPORTATION OF ADULTERATED FOOD AND DRUGS—STATUTORY PROVISIONS.

Under Food and Drugs Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (Comp. St. 1913, § 8718), prohibiting the introduction into any state from any other state of any adulterated or misbranded article of food or drugs, section 7 (Comp. St. 1913, § 8723), providing that an article shall be deemed adulterated, in the case of confectionery, if it contains terra alba, talc, etc., or other mineral substance, or poisonous color or flavor, or other ingredient deleterious or detrimental to health, and section 10 (Comp. St. 1913, § 8726), providing for the seizure and confiscation of adulterated articles transported in violation of that act, confectionery is adulterated when it contains any of the substances specifically named, such as talc, regardless of whether the amount of the added adulterant indicates an intention to deceive, or is liable to injure health or morals, and it was therefore error for the court to charge that a mere chemical trace of talc would not constitute a violation, but that there must be enough to show some purpose of deception on the part of the manufacturer.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. ⬉⬊5.]

3. WORDS AND PHRASES—"CHROME YELLOW."

"Chrome yellow" is a metal largely used as a yellow pigment, and is an active poison.

⬉⬊For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. FOOD ⬥⟹5—TRANSPORTATION OF ADULTERATED FOOD AND DRUGS—STATUTORY PROVISIONS—"CONTAIN."

·In Food and Drugs Act June 30, 1906, § 7, providing that confectionery is adulterated, within that act, if it contain terra alba, etc., or other mineral substances, or poisonous color or flavor, or other ingredient deleterious or detrimental to health, or any vinous, malt, or spirituous liquor or compound, or narcotic drug, "contain" is used in a general and not in a restricted sense, and confectionery may "contain" any of the prohibited substances if they are used as a compound, a filler, a flavor, a pigment to color it internally or externally, a coating, or other similar purpose, especially if purposely used for those or other similar purposes, even in minute quantities.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. ⬥⟹5. For other definitions, see Words and Phrases, First and Second Series, Contain.]

In Error to the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Information by the United States against R. C. Boeckel & Co. and another. Judgment for defendants, and the United States brings error. Reversed and remanded.

James S. Allen, Jr., Asst. U. S. Atty., of Boston, Mass. (George W. Anderson, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Henry W. Beal, of Boston, Mass. (Thomas E. Lannen, of Chicago, Ill., on the brief), for defendants in error.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This is an information by the United States against 131 boxes of confectionery, a part of which had been transported into Massachusetts from New York and a part from Pennsylvania. It was brought under section 10 of the Food and Drugs Act of June 30, 1906 (34 Stat. at Large, p. 768, c. 3915 [Comp. St. 1913, § 8726]), for the purpose of seizing and condemning the confectionery on the ground that it contained talc, and was therefore adulterated within the meaning of section 7 of the act. A warrant having issued, the marshal seized 104 boxes of the confectionary, that being all that could be found. R. C. Boeckel & Co. appeared as claimants of 30 boxes and Henry Heide as claimant of 73 boxes of the property seized.

There was a trial by jury, and a verdict that the confectionery was not adulterated.

[1] It is conceded by the claimants that the confectionery was shipped in interstate commerce; that it was in the original and unbroken packages when seized; that it was treated with talc during the process of rolling, in order to impart a polish and to prevent adhering; that minute quantities of talc may have adhered, but, if so, the quantity was so small as to be almost incapable of measurement. They deny that the talc was used as an adulterant, or that the confectionery was adulterated, within the meaning of the act. Talc is a mineral compound, not an article of food, and is known as hydrated silicate of mag-

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

nesia. There was no evidence that it exists naturally in any form of confectionery.

[2] Evidence was introduced which tended to prove that a little less than a pound of the confectionery taken as a sample from the boxes claimed by Heide contained talc to the amount of one-tenth of 1 per cent., or about one-half as much as you could heap on a 10-cent piece; that a like sample of that claimed by Boeckel & Co. contained a little more than one one-hundredth of 1 per cent. of talc; and that, if all the mineral matter found in the outer portion of the confectionery tested was talc, it would be a mere trace, which could be detected only by chemical examination.

The court refused to charge the jury that, if they found the confectionery contained talc, it was adulterated within the meaning of the statute, and instructed them, in substance, that it would not be adulterated if it contained a mere chemical trace of talc, and only if it contained a quantity of talc large enough to be significant or important for some possible practical purpose; that a mere chemical trace, only to be detected by a skillful chemist, would not be sufficient; that there must be enough to show some purpose of deception on the manufacturer's part—enough to show a want of that extreme care exhibited by the manufacturer in guarding the purity of his product. The errors assigned are to the refusal to give the requested instruction and to the instructions given.

The provisions of the statute material for our consideration in passing upon the questions raised by the assignments of error are as follows:

"An act for preventing the manufacture, sale, or transportation of adulterated or misbranded or poisonous or deleterious foods, drugs, medicines, and liquors, and for regulating traffic therein, and for other purposes.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Sec. 2. That the introduction into any state \* \* \* from any other state \* \* \* of any article of food or drugs which is adulterated or misbranded, within the meaning of this act, is hereby prohibited; and any person who shall ship or deliver for shipment from any state \* \* \* to any other state \* \* \* any such article so adulterated or misbranded within the meaning of this act \* \* \* shall be guilty of a misdemeanor," etc.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Sec. 6. \* \* \* The term 'food,' as used herein, shall include all articles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound.

"Sec. 7. That for the purposes of this act an article shall be deemed to be adulterated \* \* \*

"In the case of confectionery:

"If it contain terra alba, barytes, talc, chrome yellow, or other mineral substance or poisonous color or flavor, or other ingredient deleterious or detrimental to health, or any vinous, malt or spirituous liquor or compound or narcotic drug.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Sec. 10. That any article of food \* \* \* that is adulterated \* \* \* within the meaning of this act, and is being transported from one state, \* \* \* to another for sale, or, having been transported, remains unloaded, unsold, or in original unbroken packages, \* \* \* shall be liable to be proceeded against in any District Court of the United States within the district where the same is found, and seized for confiscation by a process of libel for condemnation."

It is apparent from the language of section 7 that confectionery which contains any one of certain things there specified, to wit, terra alba, barytes, talc, chrome yellow, or any vinous, malt, or spirituous liquor or narcotic drug, is deemed to be adulterated, and that, under section 2, its transportation in interstate commerce is prohibited. If the language of the statute is ambiguous in regard to what the standard is for determining adulteration on account of the use of the general terms—"or other mineral substance or poisonous color or flavor, or other ingredient deleterious or detrimental to health"—there is none where the specific terms above mentioned are employed. Congress, knowing that terra alba, barytes, and talc were commonly used as adulterants in confectionery, to increase its weight and cheapen its quality, in its wisdom provided that confectionery containing any of these substances should be deemed adulterated and be excluded from transportation in commerce, without regard to whether the quantity contained in a given article of confectionery was such as to increase its weight or cheapen its quality, so as to deceive and mislead.

[3] Chrome yellow is a metal which is widely used as a yellow pigment, and is an active poison. The consumption of vinous, malt, and spirituous liquors leads to pauperism and crime. In declaring that confectionery containing this pigment or any of the liquors named should be deemed adulterated, Congress likewise refrained from making the question of adulteration depend upon the quantity which the confectionery contained, and plainly manifested an intention that confectionery containing any of these things should be deemed to be adulterated. The language of the statute being unambiguous, so far as it relates to the particular adulterants mentioned, its words must be given their ordinary meaning. When so construed, confectionery which contains any of the specific substances or liquors named is adulterated, without regard to the question whether in the particular case the amount of added adulterant indicates an intention to deceive, or is liable to injure health or morals.

This construction of the statute is recognized in the case of French Silver Dragee Company v. United States, 179 Fed. 824, 828, 103 C. C. A. 316, 320, where the court said:

"We think that the history of the act, the objects to be accomplished by it, and the language of all its provisions require that it should be so interpreted that in the case of confectionery, as in the cases of food and drugs, the government should establish, with respect to articles *not specifically named*, that they either deceive, or are calculated to deceive, the public, or are detrimental to health."

In that case the confectionery in question was coated with pure silver, which was not one of the substances specifically named in section 7, and, in order to render it an adulterant within the meaning of the general provisions—"other mineral substance," or "other ingredient deleterious or detrimental to health"—it was held that it must be shown that the silver coating was either deceptive or injurious to health, and that, as there was no proof of those facts, the confectionery could not be found to be adulterated within the meaning of the statute.

In many of the states laws have been passed prohibiting the sale of

adulterated milk, and standards for determining adulteration have been fixed, such as that milk shall be regarded as adulterated "to which water or any foreign substance has been added," or when it is "shown upon analysis to contain more than 87 per cent. of watery fluid, or less than 13 per cent. of milk solids." And it has been uniformly held that milk to which water has been added, or milk to which water has not been added, but which contains more than 87 per cent. of watery fluid or less than 13 per cent. of milk solids, is adulterated, without regard to the quantity of water added or the extent to which an analysis showed the milk contained more of watery fluid or less of milk solids than the standard required; and these laws have been upheld as constitutional. State v. Schlenker, 112 Iowa, 645, 84 N. W. 698, 51 L. R. A. 347, 84 Am. St. Rep. 360; Commonwealth v. Waite, 11 Allen (Mass.) 264, 87 Am. Dec. 711; Commonwealth v. Gordon, 159 Mass. 8, 33 N. E. 709; Commonwealth v. Schaffner, 146 Mass. 512, 16 N. E. 280; Commonwealth v. Wetherbee, 153 Mass. 159, 26 N. E. 414; State v. Campbell, 64 N. H. 402, 13 Atl. 585, 10 Am. St. Rep. 419; State v. Smythe, 14 R. I. 100, 51 Am. Rep. 344; People v. West, 106 N. Y. 294, 12 N. E. 610, 60 Am. Rep. 452. See, also, State v. Griffin, 69 N. H. 1, 39 Atl. 260, 41 L. R. A. 177, 76 Am. St. Rep. 139; State v. York, 74 N. H. 125, 65 Atl. 685, 13 Ann. Cas. 116, and Reyfelt v. State, 73 Miss. 415, 18 South. 925.

[4] It is also to be noted that in section 7 the word "contain," taken in connection with the words "terra alba, barytes, talc, chrome yellow," "color," "flavor," "vinous, malt and spirituous liquors," is used in a general and not in a restricted sense, and that confectionery may be found to contain any of the prohibited substances if they are used as a compound, a filler, a flavor, a pigment to color it internally or externally, a coating, or other similar purpose, and especially if they are purposely used, even in minute quantities, for these or other similar purposes.

As the confectionery here in question was adulterated within the meaning of the act, if it contained any talc, and as there was evidence from which it could have been found that it contained talc, we are of the opinion that the court erred in declining to give the instruction requested, and in those that were given.

The judgment of the District Court is reversed, the verdict set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion.