UNITED STATES *v.* DAVIES, TURNER & CO. (No. 3025[1])

United States Court of Customs Appeals, April 9, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Kenneth G. Osborn*, special attorney, of counsel), for the United States.

No appearance for appellee.

---

[1] T. D. 42719.

[Oral argument February 16, 1928, by Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Ten casks of ammonium sulphocyanide were classified by the collector under paragraph 5 of the Tariff Act of 1922, which is as follows:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

The importer had entered the same as free of duty under paragraph 1565 of the same act, and protested the classification of the collector, claiming it to be free of duty as entered. Paragraph 1565 follows:

PAR. 1565. Cyanide: Potassium cyanide, sodium cyanide, all cyanide salts and cyanide mixtures, combinations, and compounds containing cyanide, not specially provided for.

The case was submitted on the record and a sample of the merchandise. The report of the assistant collector was as follows:

SIRS: I transmit herewith the protest No. 13738, with accompanying invoice (1) and entry 011674, of Davies, Turner & Co., against the assessment of duty at the rate of 25% ad valorem on ammonium sulphocyanide, imported by them per S. S. *West Celina* and entered for consumption Mar. 23, 1926.

The claim of the importers is set forth in the inclosed protest.

The liquidation of the entry was based on the advisory classification of the appraiser.

I inclose herewith the special report of the appraiser, dated the 2d instant, who states that "The merchandise subject of protest consists of ammonium sulphocyanide, entered free under par. 1565, and returned for duty at the rate of 25% ad valorem under par. 5 of the present tariff act as a chemical salt or compound, in accordance with T. D. 41120."

The appraiser reports "Sample retained."

Entry 011674 was liquidated April 22, 1926. Protest was filed May 21, 1926, therefore filed within the statutory period.

A return of the invoice and entry is requested.

The court below sustained the protest, in what appears to us to be a very well written and well considered opinion by Mr. Justice Brown, from which action the Government has appealed to this court.

The Government, first, contends that the court below should have been bound by the classification of the collector, since there was no testimony contradicting the finding of the collector, and that his assessment for duty of the merchandise under paragraph 5 was presumptively correct, and that, under the rule set out in *Vitelli & Son v. United States*, 7 Ct. Cust. Appls. 243, T. D. 36544, and other authorities, his assessment under paragraph 5 carries with it the presumption of a finding of all the essential facts which bring it within the paragraph.

The court below very ably discusses this first question and holds:

That the importer had a right to submit his case on the facts as they appear in the official certificate of the collector without further evidence is clear from the following authorities: * * *

Here the following authorities are cited and quoted from at length: *Lehigh Manufacturing Co.* v. *United States*, 153 Fed. 596, T. D. 28055; Francois Coste, G. A. 7837, 30 Treas. Dec. 15; Mills & Gibb, Abstract 41214, 33 Treas. Dec. 560.

The court below quotes from the last cited authority (Mills & Gibb) as follows:

The presumption in favor of official action can not overcome facts which clearly appear from the record. In the case of *Seattle Brewing & Malting Co.,* 1 Ct. Cust. Appls. 362; T. D. 31454, Judge Barber, writing for the court, disposed of that claim in the following vigorous language:

As to the Tremont shipment, the assessment of the entire importation at the higher rate is concededly unlawful and incorrect, because both sides agree that some portion of the rice would pass through the prescribed sieve, and *it would be strange if a due regard for the law should require us to hold that this presumption in favor of the correctness of the collector's action is so potent as to make lawful that which is unlawful and to treat as correct that which is an error.* Such a conclusion contravenes good law and good morals, and we decline to adopt it. (Italics ours.)

We think this is the law and that the court properly consulted the authorities as to the common meaning of cyanide salts and cyanide mixtures, combinations, and compounds containing cyanide, in order to ascertain if the merchandise, ammonium sulphocyanide, properly came within paragraph 1565.

The court below, in determining this question, said:

In *United States* v. *Merck & Co.,* 8 Ct. Cust. Appls. 171, T. D. 37288, Judge De Vries, affirming this division (then Board 1 of the Board of General Appraisers), held that it was this court's duty to classify merchandise upon the definitions and statements given in commercial works. In pages 172 and 173 he says:

There was no testimony upon this point introduced before the board, their decision being predicated upon the definition of "lanolin" as given in certain scientific treatises, which, it was held by the board, conformed with the lexicographic definitions of lanolin. On the other hand, the Government maintains, among other matters urged, that "lanolin" as commonly used and understood includes both these products, and that the board erred (1) in resorting to and (2) in adopting the scientific definitions in the publications in question in order to determine and in determining the issue presented.

At the threshhold of the inquiry the Government presents the proposition, generally, that resort to scientific definitions and publications in the determination of tariff issues is error.

In consideration of this question it may be well to observe primarily the distinction which is pointed out by the authorities between *receiving in evidence* scientific publications and the *consultation* of them by the court as aids in refreshing the memory as to scientific facts, truths, and laws. * * *

After citing and reviewing authorities, he concludes, on page 176, as follows:

The clearly deductible rule from authorities therefore seems to be that a court is warranted, that the ends of justice may not be defeated, in taking judicial notice of such public records, documents, dictionaries, and scientific treatises which the court under all the circumstances of the case "may deem safe and proper."

It may be appropriate to remark that this conclusion perfectly accords with the practice of all courts, tribunals, and officials interpreting customs laws since

the foundation of the Government and that the adoption of any other rule discards the selected and approved wisdom of both the ages and modern years, which uniformly, it may be said, in deference to public criticism and rejection and in the interests of acceptance and approval, keeps abreast with the advance in mechanism, science, and the arts, and, in lieu thereof, would probably make such courts, tribunals, and officials controlled in their decisions by the limited knowledge of the interested and too frequently uninformed vendor of the particular merchandise.

Wherefore the court is of the opinion that in this case the board was entirely justified in its examination of the authorities noted and the refreshing of its memory therefrom.

The United States Customs Court, having decided that it was justified in consulting the definitions and statements given in commercial and scientific works, said:

Thorpe's Dictionary of Applied Chemistry (1918), volume 2, page 180, describes cyanides as follows: "Cyanides. Compounds of the radicle cyanogen CN." And on page 201 of the same edition headed "Cyanides," lists ammonium sulphocyanide with formula $NH_4SCN$. It is therefore a "cyanide salt" and also "a compound containing cyanide," both of which are expressly covered by paragraph 1565.

\* \* \* \* \* \* \*

As it thus plainly appears that paragraph 1565 more specifically covers the merchandise than does the chemical-compound paragraph 5, judgment will therefore issue sustaining the claim in the protest for free entry and ordering refund of the duty collected.

The second contention of the Government is that if this court reviews the action of the court below upon the merits of the question and undertakes to determine whether ammonium sulphocyanide falls within any of the provisions of paragraph 1565, it should find contrary to the decision of the court below, and that the merchandise is not a cyanide and, therefore, does not properly fall within the provisions of paragraph 1565.

It is, of course, conceded that if the merchandise answers to the descriptions within the provision of paragraph 1565, it is therein more specifically provided for than in paragraph 5. The Government has quoted from Lunge on "Coal Tar and Ammonia," Part I, page 305; the same authority, Part III, page 1310 and page 1547; and from Herbert E. Williams on "Cyanogen Compounds." Our attention is also called to the brief of Roessler & Hasslacher submitted to the Senate Finance Committee and printed in the records of that committee on page 4800; also to the "Summary of Tariff Information, 1921," page 1435, as well as various definitions of cyanide and cyanogen as found in different dictionaries.

None of these citations are convincing that the court below erred in holding that paragraph 1565 was intended to include the ammonium sulphocyanide in controversy.

The case was, by the court below, very carefully considered again upon a petition for rehearing, and many additional and interesting authorities were there quoted and commented upon, and it will not be necessary for us to repeat them here.

In matters involving highly technical questions in chemistry it is by far the better practice for the lawyers in the case to call in as witnesses men versed in such scientific subjects and place before the court proper proof of the character of the controverted merchandise, and it is hardly fair to the court to be required to seek out the written authorities and judge as to their competency and pertinence to the issues involved. But when confronted with an issue, as was the court below, without any proof having been produced, it was its privilege and its duty to do exactly what it did, and if there is any error in its interpretation of or the weight it gives to such authorities, the litigants have themselves to blame.

We think the authorities quoted in the very carefully prepared opinion of the court below, together with other authorities we have examined, sustain the finding of the court below. We certainly have found nothing justifying our disturbing its decision.

The importation was reported to the collector by the appraiser to be ammonium sulphocyanide and a chemical salt or compound. The collector based his classification on that report and classified the merchandise under paragraph 5 of the Tariff Act of 1922 as a chemical salt or compound not specially provided for. If the merchandise be either a cyanide salt or a cyanide mixture or a cyanide combination or a compound containing cyanide, the merchandise is entitled to free entry under the provisions of paragraph 1565. Ammonium sulphocyanide, represented by the chemical symbol $NH_4SCN$, is recognized by the chemical authorities as a salt:

*Ammonium thiocyanate. Ammonium sulphocyanide.* $(NH_4)SCN$.—This salt is produced by various reactions (see method for detecting hydrocyanic acid, p. 429), including the action of carbon disulphide on ammonium sulphide: $(NH_4)_2S + CS_2 = NH_4SCN + 2H_2S$ (compare p. 488) * * *. (Allen's Commercial Organic Analysis, Vol. III, Pt. III, p. 495.)

*Thiocyanic acid*, CNHS, also called *sulphocyanic acid.* * * *.—Hydrogen thiocyanate, or thiocyanic acid, HCNS, * * *. By neutralizing the liquid with ammonia, and evaporating very gently to dryness, ammonium thiocyanate, $NH_4CNS$, is obtained as a deliquescent, saline mass. The salt may be conveniently prepared by digesting hydrocyanic acid with yellow ammonium sulphide (containing excess of sulphur), and boiling off the excess of the latter: * * *. Fownes' Elementary Chemistry (Watts), pp. 572, 573.

Even if ammonium sulphocyanide were not a salt, it is listed as one of the cyanides. See Watts' Dictionary of Chemistry, Morley & Muir, Vol. II, p. 327, at p. 348.

As it is admitted by both sides that the importation is a chemical compound, it might well be regarded as a cyanide combination or as a compound containing cyanide. If no chemical reaction took place and it is not a cyanide combination or a compound containing cyanide, then it is at least a mixture containing cyanide.

It might be well to call attention to the fact, which was discussed in argument before this court, that the authorities seem to support the proposition that the symbols CN and Cy are both given for cyanogen. CN is in accordance with the chemical literature of the present day, because it shows that the compound is made up of carbon and nitrogen. The symbol Cy is not used to any great extent by American chemists. The English chemists, while still using it to some extent, have gradually adopted the use of symbol CN. See Inorganic Chemistry, by Mellor.

In Roscoe and Schorlemmer's Treatise on Chemistry, Volume I, page 658, we find the following:

*Cyanogen gas, or dicyanogen,* $C_2N_2$ or $Cy_2$. Density$=25.98$.—411. This gas, which was discovered by Gay-Lussac, is formed when the cyanides of mercury, silver, or gold are heated. For this purpose it is usual to employ mercuric cyanide, which decomposes thus:

$$Hg(CN)_2 = Hg + C_2N_2$$

The mercury salt placed in a tube of hard glass fitted with a cork and gas-delivery tube, or in a small hard glass retort, is heated to dull redness, and the gas collected over mercury.

Cyanogen gas can also be obtained by other reactions. For instance, it is formed when oxalate of ammonia is heated with phosphorus pentachloride; thus: * * *.

In Eliot and Storer's Elementary Manual of Chemistry, at page 136, we find the following:

210. *Carbon and nitrogen.*—Prominent among the compounds of carbon and nitrogen is cyanogen (CN), which is an important compound radical, and which also exists in the free state.

211. *Cyanogen* (CN or Cy).—Carbon and nitrogen do not unite directly, but when a current of nitrogen is passed over red-hot charcoal which has been previously soaked in a solution of potassium carbonate, there is formed potassium cyanide, a compound containing the radical cyanogen

$$K_2CO_3 + 4 \ C + 2 \ N = 2 \ KCN + 3 \ CO$$

*Free cyanogen* is best prepared by heating mercuric cyanide; thus: $HgCy_2 = Hg + 2$ Cy. It is a colorless, poisonous gas of suffocating odor and ready inflammability. Its molecule contains two atoms of the radical and is written $(CN)_2$.

212. *Cyanhydric acid* (HCN).—Cyanhydric acid, which may be prepared by passing hydrogen sulphide over mercury cyanide (Hg $(CN)_2 + H_2S = HgS + 2$ HCN), is a combustible and volatile liquid; it possesses the odor of bitter almonds and is intensely poisonous. In aqueous solution it is known as prussic acid.

Upon the record as it comes to us, therefore, we hold that paragraph 1565 covers the merchandise involved and that it is more specifically provided for in this paragraph than as "chemical salts" or "compounds," etc., in paragraph 5, and that the judgment of the court below ought to be and is *affirmed*.

GRAHAM, P. J.: I concur in the conclusion.