## UNITED STATES *v.* LO CURTO & FUNK (No. 3180) [1]

[1] T. D. 43777.

United States Court of Customs and Patent Appeals, December 19, 1929

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks* and *Philip Stein* of counsel), for the United States.

*James W. Bevans* for appellee.

[Oral argument October 15, 1929, by Mr. Lawrence and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the United States Customs Court.

Merchandise known as whiteoline and consisting of a chemical compound—copper sulphocyanide (CuCNS)—was assessed for duty by the collector as a chemical compound at 25 per centum ad valorem under paragraph 5 of the Tariff Act of 1922, which reads as follows:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

The importer protested the collector's classification, claiming that the merchandise was free of duty under paragraph 1565, which reads as follows:

PAR. 1565. Cyanide: Potassium cyanide, sodium cyanide, all cyanide salts and cyanide mixtures, combinations, and compounds containing cyanide, not specially provided for.

Two expert chemists testified for the Government on the trial below. In substance, they said that the imported merchandise was not a cyanide salt, a cyanide mixture, a combination of cyanides,

nor a compound *containing* cyanide; that it was a chemical compound resulting from the combining of cyanogen (CN), copper (Cu), and sulphur (S); that copper cyanide is produced by combining cyanogen with copper, but that the addition of sulphur causes a chemical reaction which destroys the cyanide and forms an entirely new substance—a chemical compound—which differs radically from the original elements; that copper sulphocyanide does not, in fact, contain cyanide; and that the uses of the imported chemical compound and cyanides are entirely different.

It is elementary that duty must be assessed upon imported merchandise in its condition at the time of its importation. This chemical compound, if we may rely upon the testimony of these expert witnesses, did not contain cyanide in any form.

It will be observed that paragraph 1565, *supra*, starts with the word "Cyanide:", then follows a provision for "Potassium cyanide, sodium cyanide, all cyanide salts and *cyanide mixtures*, combinations, and *compounds containing cyanide*, * * *." (Italics ours.)

The Congress has plainly provided for mixtures of *cyanide*, combinations of *cyanide*, and compounds *containing cyanide and other materials*. Whether the paragraph was intended to cover chemical compounds need not be discussed. We know, however, that a compound, whether chemical or mechanical, must contain cyanide in one of its various forms in order to be entitled to classification under paragraph 1565. The provision for *compounds* does not include *compounds made from cyanides;* it is limited to compounds *containing* them.

The imported article may be a cyanide salt, but, in the face of the uncontradicted testimony of two concededly qualified expert witnesses that it is not, we are unwilling to hold that it is. Furthermore, it is not a mixture or a combination of cyanides for two obvious reasons: First, it is a chemical compound, and, therefore, can not be a mixture or combination of cyanides; second, assuming that it contains a cyanide, it also contains elements other than cyanide, therefore, it can not be a mixture or combination of cyanides. *Strohmeyer & Arpe Co.* v. *United States*, 2 Ct. Cust. Appls. 285, T. D. 32035. It is not a compound *containing* cyanide, for the reasons heretofore stated.

In the case of *United States* v. *Davies, Turner & Co.*, 16 Ct. Cust. Appls. 50, T. D. 42719, this court was called upon to consider the dutiable status of ammonium sulphocyanide. In view of the fact that the parties had failed on the trial below to introduce the testimony of those having expert knowledge of the subject, the court considered it proper to resort to Thorpe's Dictionary of Applied Chemistry and other authorities for information. Basing our decision upon the information thus obtained, we held that a chemical compound—ammonium sulphocyanide—was free of duty under paragraph 1565, *supra*. In disposing of the case, the court called atten-

tion to the fact that, in a case involving highly technical questions, it should be assisted by the testimony of expert and qualified witnesses. We went so far as to suggest that it was unfair to the court to present such a case without such testimony. The Government has followed the court's suggestion in the case at bar. Of course, if the testimony of expert witnesses, in a case of this character, is inconsistent with known scientific facts, or if for any other reason it ought to be rejected, we are not bound to accept it. However, in the case at bar, we are unable to see any sound reason for the rejection of the testimony.

As was said in the *Davies, Turner & Co.* case, *supra*, "Thorpe's Dictionary of Applied Chemistry (1918), volume 2, page 180, describes cyanides" as "Compounds of the radical cyanogen CN." But it does not follow that all compounds of the radical cyanogen (CN) are cyanides. In this connection the witness, Doctor Knight, said:

\* \* \* Cl means chlorine just the same as CN means cyanogen, but only in certain cases does CN mean cyanide.

\* \* \* \* \* \* \*

Q. Is that this preparation, a radical in which CN is chemically combined with copper?—A. No; it is not.

Q. Isn't it combined with something else?—A. It is combined with the sulphur to form another radical that is entirely different from the CN; that is, the CNS radical is entirely different; than that complex radical of CNS is then combined with the copper, but that is entirely different from the CN coupled alone with the copper.

\* \* \* \* \* \* \*

Q. CN is merely a gas?—A. Cyanogen alone is a gas. When it is combined it is still cyanogen, but it is combined with other elements; but when it is combined alone with one element, then it is a cyanide, but if it is combined with a number of elements then it is a cyanogen compound and not a cyanide.

Q. When CN is combined with S (for sulphur) that changes the characteristics of it entirely?—A. Yes; it is no longer a cyanide. It is a thiocyanate or a sulfocyanate, sometimes incorrectly called sulfocyanide.

Justice BROWN. CuCN is copper cyanide.

The WITNESS. Yes.

Justice BROWN. Is not this thing a compound containing copper cyanide?

The WITNESS. No; because you can't take the CuCN and separate it from the sulphur, because it is coupled up in a different way. The CN is coupled up very intimately with the sulphur to form a new compound. It is combined with potassium to form an entirely different product.

Doctor Knight's testimony is corroborated by the testimony of the witness, L. B. McSorley, who, among other things, said:

Q. Do you know what copper sulfocyanide is?—A. I do.

Q. Will you state the formula?—A. CuCNS.

Q. Is there a radical part of that formula?—A. The radical sulfocyanogen.

Q. What is the radical?—A. CNS.

Q. Just what does that mean?—A. That means that copper sulfocyanide is a copper salt of sulfocyanic acid or thiocyanic acid.

Q. How does that acid differ from the other acid you have mentioned from which you get sodium cyanide?—A. It has a number of different characteristics. In the first place the sulfocyanides are not poisonous as are the cyanides on

decomposition. When treated with acid the cyanides liberate hydrocyanic acid and the sulfocyanides liberate sulfocyanic acid.

Q. Is there a difference between the radical CN and the radical CNS?—A. There is.

Q. Will you tell us in a brief way, a brief general way, about what the difference is between the radical CN and the radical CNS, as to their characteristics and habits.—A. The essential difference is that the sulfocyanic radical has an atom of sulphur added to the CN, forming an entirely new radical, thiocyanate or sulfocyanate, which are not used interchangeably with the cyanides because they do not possess the same properties. For instance, iron sulfocyanide has a very characteristic, deep red color and is largely used in laboratories as a test for the presence of iron. Copper sulfocyanide has a chocolate color, entirely distinct from the copper cyanide; and in the use to which a cyanide is put sulfocyanides would not be applicable. For instance, I myself have done a little electrochemical work in plating metals from solutions, and the results obtained by plating from a cyanide solution—that is, in a laboratory way—are far better and far different than the results obtained from attempting to plate from a sulfocyanide solution.

It seems to us that the testimony in the case is not inconsistent with the language contained in Thorpe's Dictionary of Applied Chemistry, but, on the contrary, interprets and amplifies it.

For the reasons stated, we are of opinion that the merchandise is not included within the provisions of paragraph 1565, and that it was properly classified by the collector under paragraph 5.

The judgment is *reversed*.

### DISSENTING OPINION

BLAND, Judge: Paragraph 1565 reads as follows:

PAR. 1565. Cyanide: Potassium cyanide, sodium cyanide, all cyanide salts and *cyanide mixtures, combinations, and compounds containing cyanide*, not specially provided for. [Italics mine.]

Congress may not have known much about cyanide when it prepared this paragraph, but it certainly did evidence a desire to include all cyanide substances. It was particular to include certain named cyanides as well as *cyanide mixtures, combinations*, and *compounds containing cyanide*.

Mr. Justice Brown asked Mr. McSorley the following question:

You think if the paragraph did not contain the words "compounds containing cyanide" its meaning would not differ?

and the witness answered:

Of course, I am not responsible for the wording of this paragraph.

Mr. Justice Brown further asked:

Do you think if the words "compounds containing cyanide" were stricken out that would not affect the meaning of the paragraph?

The witness replied he did not think it would.

The witness, whose construction of the paragraph this court has adopted, did not hesitate to say that Congress did a vain and senseless

thing. Under the circumstances of this case neither this court nor any other court is privileged to take this attitude.

In *Clark* v. *Barnard*, 108 U. S. 436, 460, the court said:

It would have been, upon an assumption, a vain and senseless thing, and however private persons may be sometimes supposed to act improvidently, we are not to put such constructions, when it is legally possible to avoid them, upon the deliberate and solemn acts and transactions of a sovereign power, acting through the forms of legislation.

See *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, 21, T. D. 42714, and *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155.

The testimony of the expert witnesses is substantially as set out in the majority opinion. Their testimony is to the effect that copper sulphocyanide contains no cyanide as such; that cyanide ingredients or cyanogen gas went into the making of copper cyanide, but that in the making of copper sulphocyanide the cyanides existing in the component materials were changed by chemical action to a point where cyanides as such, and technically speaking, did not exist. The expert witnesses said that when CuCN was combined with S (for sulphur) that the characteristics of the same were changed entirely and that it was no longer a cyanide. The conclusion of the witnesses is to the effect that, strictly speaking, there is no such thing as a cyanide existing by itself nor is there a chemical combination which can contain cyanide. They agree there may be a sulphur cyanide or a copper cyanide but that there is no cyanide without its combination with some other ingredient.

In *United States* v. *Pfaltz & Bauer (Inc.) et al.*, 16 Ct. Cust. Appls. 358, T. D. 43091, in trying to arrive at the intent of Congress in its tariff treatment of aluminum and the scope to be covered by the phrase "alloys of any kind in which aluminum is the component material of chief value," this court held that alsimin was such an alloy although in determining the component of chief value it was necessary to determine the value of the materials at the time when the several components were put together. The importer insisted that when the components were put together no aluminum as such was used, but that bauxite ore was added to carbon and silicon and that, therefore, at the time of assembly aluminum was not a component.

This court took a broader view of the case than the importer desired and held that, regardless of whether bauxite was aluminum or contained aluminum, it did contain the materials from which aluminum metal was derived and that Congress necessarily intended to include this kind of product (alsimin) in the quoted phrase. To have indulged in the technical refinements in that case which are insisted upon in this would have resulted in a different conclusion.

In arriving at the intention of Congress in reference to classification under tariff acts, such technical meaning as is ascribed by the majority to the word "containing" is never favored, if the same results in rendering futile and purposeless expressions in the act or if incongruous and illogical results flow therefrom.

In *United States* v. *R. C. Boeckel & Co.*, 221 Fed. 885, 889, the court in construing the word "contain," which occurred in the Pure Food Act with reference to confectionery which would be deemed adulterated if it contained terra alba, barytes, *talc*, etc., and where the proof showed that the confectionery contained a mere trace of talc detected only by chemical examination, the court said:

> It is also to be noted that in section 7 the word "contain," taken in connection with the words "terra alba, barytes, talc, chrome yellow," "color," "flavor," "vinous, malt and spirituous liquors," is used in a general and not in a restricted sense, and that confectionery may be found to contain any of the prohibited substances if they are used as a compound, a filler, a flavor, a pigment to color it internally or externally, a coating, or other similar purpose, and especially if they are purposely used, even in minute quantities, for these or other similar purposes.

Now, giving the witnesses full credit for knowing and truthfully telling all about the subject which was necessary for our decision of this case, and giving their testimony full weight, the question before the court is, Did Congress by the very carefully worded free-list paragraph intend to include therein a copper sulphocyanide which is listed with the cyanides in the authorities referring to the same and which is *made* substantially of a cyanide ingredient?

If the majority opinion is right, then no one could have answered Mr. Justice Brown's questions in any other way than in the way Mr. McSorley answered them. In the view of the majority, "compounds containing cyanide" added nothing to the language used, because if it was a simple compound in which the original ingredients maintained their separate identities, it would be no more than a combination or a mixture. *Strohmeyer & Arpe Co.* v. *United States*, 2 Ct. Cust. Appls. 285, T. D. 32035.

It follows that, if by the words "compounds containing cyanide" Congress meant mixtures or combinations containing cyanide as such, then the use of such term was purposeless and confusing and Mr. McSorley was right in his conclusion that the legislature wrote into the paragraph a purposeless expression.

The term "compounds containing cyanide," in my judgment, was meant to include just such merchandise as this, even though the cyanide that went into it, and which was its most essential component, might not have been in its original condition when imported. Cyanide went into the compound and it is not suggested that it ever came out of it, and it seems logical to conclude, therefore, that it was contained therein in some form at the time of importation.

No one connected with this case has been able to answer Mr. Justice Brown's questions in any other way than the manner in which McSorley answered them, and until there is a logical, reasonable answer forthcoming, explaining the use of this term by the legislature, I think the court should not give the word "containing" such a meaning as is given in the majority opinion.

To deny copper sulphocyanide free classification under paragraph 1565 is not justified by the context of the paragraph and the history of the cyanide legislation. The judgment of the court below should have been *affirmed*.

DISSENTING OPINION

GARRETT, Judge: I agree with Judge BLAND in the opinion that the judgment of the Customs Court should be *affirmed* and with him dissent from the conclusion of the majority.